**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TERRY W. RUSSELL, JR.,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner** )<br>**of the Social Security Administration,** )<br>)<br>**Defendant.** ) | Case No. 13-cv-456-TLW |

**OPINION AND ORDER**

Plaintiff Terry Wayne Russell, Jr. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying disability insurance benefits for plaintiff under sections 216(i) and 223(d) of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 13). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**Introduction**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## Background

Plaintiff, then a forty-two year old male, filed his application for disability insurance on January 18, 2010, claiming an onset date June 30, 2008. (R. 132-33). Plaintiff's application was denied initially and on reconsideration. (R. 73, 76-79; 74, 81-83). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted the hearing on December 8, 2011. (R. 38-72). At the hearing, it was noted that the claimant had post-alleged onset date earnings; accordingly, plaintiff amended his alleged onset date to July 2, 2009. (R. 42). On February 1, 2012, the ALJ entered his decision denying benefits. (R. 23-33). Plaintiff requested that the Appeals Council review the decision. The Appeals Council declined to review the ALJ's decision on May 21, 2013, making the ALJ's decision the Commissioner's final decision. (R. 1-8). On July 25, 2013, plaintiff filed the subject action with this Court. (Dkt. 2).

## The ALJ's Decision

The ALJ found that plaintiff had not engaged in any substantial gainful activity since July 2, 2009, his amended alleged onset date. (R. 25). The ALJ found that plaintiff had the following severe impairments: "degenerative joint disease of the ankles and feet and degenerative disc disease of the back, obesity, depression, anxiety and a history of polysubstance abuse." Id. Plaintiff's impairments did not meet or medically equal a listing. (R. 27-28). Applying the "paragraph B" criteria to plaintiff's mental impairments, the ALJ concluded that plaintiff had no to mild restriction in activities of daily living; mild to moderate limitation with regard to social

functioning; and moderate difficulty with regard to concentration, persistence, or pace; and no episodes of decompensation. (R. 27-28).

The ALJ then reviewed the medical evidence and the testimony from the ALJ hearing to determine that plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except for the following: The claimant has an 11th grade education with a poor ability to read, but adequate ability to write and handle numbers. He is able to lift and carry up to 10 pounds frequently and occasionally. He is able to stoop or reach occasionally. Additionally, he is able to perform tasks where there is only an occasional requirement for climbing, bending, stooping, squatting, kneeling, crouching, crawling, pushing or pulling with the left upper extremity[,] operate foot controls, or reach overhead. He has a slight limitation on fingering, feeling and gripping with the left hand. He is able to use the left hand, but not perform small, tedious tasks. He has a slight (defined as between constant and frequent) limitation on twisting his torso as well as climb, bend, stoop, squat, kneel, crouch and crawl. The claimant is able to occasionally push/pull with the left upper extremity. He is able to perform tasks where he can avoid fast or dangerous machinery, unprotected heights, cold temperatures, and standing or walking on rough, uneven surfaces. He is able to occasionally reach.
>
> Regarding the claimant's *mental* residual functional capacity, he is able to perform simple, routine tasks. The claimant is slightly limited (defined as brief and cursory) in dealing with supervisors, co-workers and the general public. (This slight limitation would not limit his work on an assembly line, but not a member of a team).

(R. 28-29).

Pertaining to the medical evidence, the ALJ considered an undated opinion letter from Richard W. Shafer, D.O., which was received after the December 8, 2011 hearing. (R. 30). He also received and considered a *Medical Source Statement* (MSS) from Dr. Shafer, signed on December 9, 2011, opining that plaintiff could lift and carry up to five pounds occasionally, sit for up to five hours, stand for up to two hours, and walk for up to one hour during a workday. Id. The MSS stated that the plaintiff would have to take four to ten unscheduled breaks for fifteen to thirty minutes throughout the course of a day. Id. The ALJ noted inconsistency within these

reports; specifically that Dr. Shafer asserted that plaintiff was able to work an eight-hour day, and yet he may need to take up to ten breaks for up to thirty minutes per day. Id. There was further inconsistency because Dr. Shaffer asserted that plaintiff could sit, stand, and walk in a combination up to eight hours. (R. 31). In consideration of "newer evidence received at [the] hearing level," the ALJ agreed with the State Agency that plaintiff is able to perform a wide range of sedentary level exertional tasks, but with additional restrictions, including plaintiff's mental residual functional capacity. Id. Based on plaintiff's testimony, the ALJ confirmed that his activities of daily living are also within a wide range of sedentary level.[1] Id. The ALJ decided that Dr. Shafer's reports were inconsistent with the record as a whole, including the testimony of the plaintiff and Dr. Shafer's own assertions. Consequently, he gave some, but not great weight to Dr. Shafer's post-hearing reports. Id.

With those limitations, plaintiff was unable to return to any of his past relevant work. Id. Relying on the vocational expert's testimony, the ALJ found that plaintiff could perform other work, such as an inspector, and an assembly worker. (R. 32). Additionally, the ALJ decided that plaintiff's history of substance abuse was not material to a finding of disability. Id. Accordingly, the ALJ found plaintiff not disabled.

## ANALYSIS

Plaintiff raises a single point of error. (Dkt. 20). He argues that the ALJ "erred as a matter of law in rejecting the opinion of the treating physician," Dr. Shafer. Id. Encompassed in this broad argument are plaintiff's complaints that the ALJ failed to determine whether Dr. Shafer's

---

[1] The ALJ noted that plaintiff takes care of and raises a four year-old child, watches television all day, sits on the porch every day, does light household work such as cooking and shopping, and partakes in leisure activities such as accommodated fishing and hunting, talking on the phone, and playing games with his family. (R. 31, 44, 60, 168-175, 192).

opinion qualified for controlling weight and that the ALJ erred by not providing medical opinion deference to Dr. Shafer's opinion by using the factors provided in 20 C.F.R. § 404.1527. (Dkt. 20 at 7, 8).

**Whether Dr. Shafer's Opinion Qualifies for Controlling Weight**

The proper procedure for evaluating the opinion of a treating physician is well established. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's opinion." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5). "The type of opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished). Generally, an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3d at 1300 (citing 20 C.F.R. § 404.1527(d)(2)). However, it is error to give the opinion controlling weight simply because it is provided by a treating source. Id.

In determining whether the opinion should be given controlling weight, the analysis is sequential. First, the ALJ must determine whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Id. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Second, if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, it is entitled to deference and must be evaluated in reference to the factors enumerated in 404.1527. Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996).

The ALJ concluded that Dr. Shafer's opinion was inconsistent with the record as a whole. (R. 31). If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. SSR 96-2p, 1996 WL 374188, at *2; see also Watkins, 350 F.3d at 1300. If an opinion fails to satisfy either of these requirements, then it is not entitled to controlling weight. Id.

The records indicate that plaintiff received medical treatment from Dr. Shafer from September 16, 2010 through December 9, 2011. (R. 382-461). Plaintiff visited Dr. Shafer on a weekly basis throughout this time period, most often to receive allergy shots. Id. The records reflect plaintiff's consistent reporting of back pain; however, Dr. Shafer only specifically noted reduced range of motion, reduced strength, and/or an abnormal gait during one visit on May 2,

2011. (R. 411). Dr. Shafer's records note normal objective findings on several visits throughout the time frame. (R. 386, 403, 421, 426, 433, 438, 453).

On December 9, 2011, Dr. Shafer completed an MSS. (R. 463). In an eight-hour work day, Dr. Shafer stated that plaintiff could sit for up to five hours, stand for up to two hours, and walk for up to one hour. (R. 463). He then indicated that plaintiff could sit for a total of one hour at one time, stand for a total of one hour at one time, and walk for a total of thirty minutes at one time. Id. Dr. Shafer opined that during a typical work day, the pain and other symptoms that plaintiff experienced would interfere with his attention and concentration even to perform simple work tasks more than twenty percent of the time. (R. 464). Dr. Shafer also stated that plaintiff would need to take four to ten unscheduled breaks lasting fifteen to thirty minutes each during an eight-hour work day, and also that plaintiff would likely need to be absent from work more than four days per month. Id.

The ALJ did not specifically state whether Dr. Shafer's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques. This failure constitutes harmless error, however, if the ALJ correctly opined that the opinion was inconsistent with other substantial evidence in the case record. (Dkt. 21 at 5). The ALJ cited the State Agency physician's opinion, arguing that the opinion indicated that plaintiff is able to perform a wide range of sedentary level tasks, and after receiving testimony at the hearing, the ALJ added manipulative and mental restrictions to plaintiff's ability to perform such tasks. (R. 31.)

By adding the postural limitations for a total of eight hours, the ALJ interpreted Dr. Shafer's opinion to mean that plaintiff could work an entire eight-hour day. (R. 30). However, the ALJ also understood Dr. Shafer's opinion to require up to ten breaks for up to thirty minutes per break, resulting in up to five hours of unscheduled break time per day. Id. Therefore, the ALJ

found Dr. Shafer's opinion to be internally inconsistent. Id. The ALJ found that the record as whole, including the State Agency opinion and testimony from plaintiff at the hearing regarding his activities of daily living,[2] suggested that plaintiff is able to perform a wide range of sedentary tasks with added restrictions; whereas, Dr. Shafer's opinion indicated that plaintiff is not able to satisfactorily perform sedentary activity at all. (R. 30, 31). Therefore, the ALJ concluded that because Dr. Shafer's opinion was inconsistent with the record as a whole, inconsistent with Dr. Shafer's own assertions, and inconsistent with plaintiff's own reports and testimony, it was not entitled to controlling weight. Therefore, the ALJ afforded Dr. Shafer's opinion some, but not great, weight. Id.; see also Watkins, 350 F.3d at 1300.

The ALJ also found that Dr. Shafer opined on an issue reserved to the Commissioner: that plaintiff was "incapacitated and [ ] unable to stand, sit or a combination of the two while working and [sic] any long term job." (R. 466). Opinions on issues reserved to the Commissioner are not entitled to controlling weight because they are administrative findings and not medical opinions. The ALJ is responsible for deciding if a claimant is disabled. 20 C.F.R. § 404.1527(d)(1)–(3). See also SSR 96-5p, 1996 WL 374183 at *5.

Based on the foregoing, the Court finds that the ALJ did not err by assigning less than controlling weight to Dr. Shafer's opinion.

**Whether Proper Medical Opinion Deference was afforded to Dr. Shafer's Opinion**

Plaintiff claims the ALJ erred by not weighing Dr. Shafer's opinion using the factors provided in 20 C.F.R. § 404.1527. (Dkt. 20 at 8). If a treating source opinion is not entitled to

---

[2] The ALJ discussed plaintiff's testimony and function reporting that he takes care of and raises a four year-old child, watches television all day, sits on the porch every day, does light household work such as cooking and shopping, and partakes in leisure activities such as accommodated fishing and hunting, talking on the phone, and playing games with his family. (R. 31, 44, 60, 168-175, 192).

8

controlling weight, the opinion is still entitled to deference and must be weighed according to the factors noted above. Watkins, 350 F.3d at 1300. However, the law does not require the ALJ to specifically engage in a factor-by-factor analysis of the medical opinion evidence. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007). (The fact that the ALJ did not specifically list the 20 C.F.R. § 404.1527(d) factors for each medical opinion was immaterial because the court could give the ALJ's decision meaningful review). Rather, the law only requires that the ALJ evaluate the evidence with sufficient specificity so that the Court can give the ALJ's decision meaningful review. Id.

Plaintiff argues that the ALJ considered only one of the six listed factors. (Dkt. 20 at 8). Moreover, plaintiff maintains that the ALJ's consideration as to that particular factor is incorrect because, according to plaintiff, the ALJ misinterpreted the MSS by understanding it to affirm that plaintiff could work an eight-hour day. Id. Plaintiff contends that the MSS identifies the postural limitations that plaintiff would have over an eight-hour period of time: sit for a maximum of five hours, *or* stand for a maximum of two hours, *or* walk for a maximum of one hour. Id. Plaintiff asserts that the ALJ's misinterpretation is clear because, pursuant to the vocational expert's testimony, the claimant could not perform competitive work if he needed up to five hours of break time per workday. Id.

As discussed above, the ALJ adequately explained why he gave Dr. Shafer's opinion some weight, but not great weight. (R. 31). The ALJ explained that the opinion was inconsistent in itself, inconsistent with "Dr. Shafer's own assertions," and with the other evidence in the record as a whole. Id. The ALJ mentioned that the State Agency physician opined that plaintiff was able to perform a wide range of sedentary level tasks, to which the ALJ added manipulative and mental restrictions. (R. 31). The ALJ expounded that plaintiff's activities of daily living are

essentially at the wide range of sedentary level, such as taking care of and raising a four-year old granddaughter, sitting and watching television all day, sitting on the porch every day, and doing light housework and a wide range of leisure time activities. (R. 31, 44, 60, 168-175, 192).

In addition, the ALJ noted the internal inconsistency within Dr. Shafer's report. In light of the ALJ's detailed discussion, the Court finds that the ALJ appropriately considered the factors in 20 C.F.R. § 404.1527, and the law does not require that the ALJ address each factor specifically. Oldham, 509 F.3d at 1258.

## **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

SO ORDERED this 18th day of December, 2014.

_____
T. Lane Wilson
United States Magistrate Judge